IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE SHIPPING, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>KOREA LINE SINGAPORE PTE, LTD.,<br><br>    Defendant.<br>_____/ | No. C 11-00911 JSW<br><br>**NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON MAY 6, 2011, AT 9:00 A.M.:

    The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with pin cites and without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

//

The Court **tentatively grants** the Motion to Shift Vessel, **tentatively grants** the motion to pay wages, and **tentatively grants** the motion for interlocutory sale and the application for a credit bid. Each party shall have fifteen (15) minutes to address the following questions:

**Motion to Shift Vessel**

1. In its motion to shift the vessel, National Maritime Services, Inc. ("Substitute Custodian") references a Declaration from James Tamulski, to which certificates of insurance are attached. (Docket No. 49 (Motion to Shift Vessel, ¶ 12).) There is no such declaration submitted in connection with the motion.[1] Rather, the Substitute Custodian submits a declaration from Bill O'Dell, in which Mr. O'Dell attests that the Substitute Custodian has obtained insurance. (Docket No. 50 (Declaration of Bill O'Dell, ¶ 14).) Is the O'Dell declaration intended as a substitute for the Tamulski declaration referenced in the motion to establish proof of insurance?

2. Ultragas International, S.A. ("Ultragas") has filed a "Response to Motion, Request for Clarification and Countermotion for Custodia Legis Expense," in which it requests that the Court order that "the value of Ultragas' marine gas oil ("MGO") consumed during the pendency of the arrest/attachment be treated as a *custodia legis* expense in favor of and payable to Ultragas." (Docket No. 88 ("Ultragas Request" at 2:7-8).) Does Ultragas oppose the motion to shift the vessel?

   a. If so, on what basis?

   b. If not, can the parties agree upon a revised proposed Order granting this motion?

**Motion to Pay Crew Wages, Repatriate the Crew**

**and Provide for Monthly Submission of Costs and Objections**

3. Do any of the parties contend that the Crew Members are not legally entitled to wages incurred after this Court issued the warrant of arrest? *See, e.g., Putnam v. Lower*, 236 F.2d 561, 570 ("It is well settled that no maritime lien can be allowed to seamen for wages accruing subsequent to the time the ship is taken into custodia legis....").

---

[1] The same is true for the Motion to Pay Crew wages.

2

4. The Crew Members do not object in principle to the motion, and have stated that they would meet and confer with the Substitute Custodian and Valerie Shipping to attempt to resolve the issue of payment of their wages. Have the parties come to an agreement on these issues?

5. Valerie Shipping, Inc. ("Valerie Shipping") opposes the motion on the basis that "the court has not been provided with a proper accounting of the amounts owed pursuant to the seamans contracts or the work actually preformed for the benefit of the *res* while the vessel has been under arrest or attachment." (Docket No. 85 (Opposition at 9:18-22).) The Substitute Custodian filed an untimely reply[2], and the Crew Members have replied to Valerie Shipping's opposition.

   a. What are the Crew Members' responses to Valerie Shipping's objections.

   b. What is Valerie Shipping's response to the materials the Substitute Custodian submits in its reply?

6. Is the Court correct that none of the parties object to the Substitute Custodian's procedure regarding submission of expenses and objections?

**Motion for Interlocutory Sale**

7. The Declaration of Elizabeth P. Beazley in support of the Motion for Interlocutory Sale includes correspondence between Defendant Korea Line Shipping PTE, Ltd. ("Defendant") and the United States Marshall in Texas, with respect to the Blue Emerald. Is there similar correspondence between Defendant and the Substitute Custodian or the United States Marshal in the Northern District of California regarding the Blue Jade, or did Plaintiff in Intervention, Nordea Bank Finland, PLC, Singapore Branch ("Nordea") intend to include the correspondence regarding the Blue Emerald as evidence that Defendant also lacks the means to seek release of the Blue Jade?

8. Is the Court correct that Plaintiff does not oppose the motion for interlocutory sale?

---

[2] The Court ordered that all replies would be due by 6:00 p.m. on May 2, 2011. (Docket No. 64.)

3

9. Nordea submitted its application for a credit bid on May 2, 2011. Does any party oppose this application and, if so, on what basis?

10. Does any party request that the Court set a minimum bid in connection with the interlocutory sale?

11. Have Nordea, Plaintiff and Ultragas resolved the issue with respect to the bunkers?

**Concluding Questions**

12. Would the parties consider consenting to a Magistrate Judge for all purposes for the remainder of the litigation?

13. Are there any other issues the parties wish to address?

**IT IS SO ORDERED.**

Dated: May 3, 2011

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

4